Hon. Kymberly K. Evanson

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CHARLES SIGWALT, M.C. 1, by and through their legal guardian, PATRICIA ORTEGA, and PATRICIA ORTEGA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and RING LLC,<br><br>Defendants. | Case No. 2:26-cv-01887-KKE<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................1

II. BACKGROUND ....................................................................................1

III. STANDARD OF REVIEW ....................................................................................3

IV. ANALYSIS ....................................................................................3

A. The FAC Satisfies Rule 8. ....................................................................................3

B. Plaintiffs' Washington Consumer Protection Act Claims Survive. ....................................................................................6

1. The FAC Pleads Injury Under the WCPA. ....................................................................................6

2. But For Defendants' Conduct, Plaintiffs Would Not Have Suffered An Injury. ....................................................................................8

3. The WCPA Applies to Ring Given Extensive Allegations Connecting the Claims with Washington. ....................................................................................9

C. Plaintiffs' Unjust Enrichment Claim Should Proceed. ....................................................................................10

D. The Virginia Appropriation Law Attacks Fail. ....................................................................................12

E. The Virginia Computer Crimes Act Claim Should Not Be Dismissed. ....................................................................................13

F. The FAC Alleges Intrusion on Plaintiff Ortega's Seclusion. ....................................................................................14

G. The Gross Negligence and Negligence Per Se Claims Survive. ....................................................................................16

H. Plaintiff Ortega Sufficiently Pleads the UCL Claim. ....................................................................................20

1. The UCL Claims Under the "Unlawful" Prong Survive. ....................................................................................20

2. There Are Sufficient Allegations for the UCL "Fraud" Claim. ....................................................................................21

3. Plaintiffs Also Allege a UCL "Unfair" Claim. ....................................................................................21

V. CONCLUSION ....................................................................................22



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024) .......... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3, 4, 6

*Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230 (2011) .......... 21

*Brewer v. Commonwealth*, 838 S.E.2d 557 (Va. 2020) .......... 13

*Brown v. Metro by T-Mobile*, 768 F. Supp. 3d 1068 (C.D. Cal. 2024) .......... 17

*Brown v. Van's Int'l Foods, Inc.*, 622 F. Supp. 3d 817 (N.D. Cal. 2022) .......... 21

*Cabral v. Ralphs Grocery Co.*, 248 P.3d 1170 (Cal. 2011) .......... 17

*Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 11

*Cameron v. Country Mut. Ins. Co.*, No. 1:24-cv-03075-MKD, 2024 WL 4557671 (E.D. Wash. Oct. 23, 2024) .......... 9

*Castillo v. Costco Wholesale Corp.*, No. 2:23-cv-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 7

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) .......... 3

*Clark v. Amica Mut. Ins. Co.*, No. 13-cv-0082-TOR, 2013 WL 12170300 (E.D. Wash. Aug. 1, 2013) .......... 15, 16

*In re Clearview AI, Inc., Consumer Privacy Litig.*, 585 F. Supp. 3d 1111 (N.D. Ill. 2022) .......... 10, 12, 13, 15

*Cortina v. N. Am. Title Co.*, 120 Cal. App. 5th 1030 (2026) .......... 19



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Del Vecchio v. Amazon.com, Inc.*,
No. C11-366RSL, 2012 WL 1997697 (W.D. Wash. June 1, 2012) ....................................7, 8

*Doe v. N. Cal. Fertility Med. Ctr.*,
No. 22-cv-01861-DAD-JDP, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ............................18

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................................................................................22

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................................................................................14

*Frame-Wilson v. Amazon.com, Inc.*,
591 F. Supp. 3d 975 (W.D. Wash. 2022)......................................................................11

*Frias v. Asset Foreclosure Servs., Inc.*,
334 P.3d 529 (Wash. 2014)....................................................................................6, 7, 8

*Fruci & Assocs., PS v. A10 Cap. LLC*,
510 F. Supp. 3d 962 (W.D. Wash. 2020)........................................................................5

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023)..................................................................14, 15

*Gray v. Amazon.com Inc.*,
No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024)............................................13, 15

*Guthrie v. Transamerica Life Ins. Co.*,
121 Cal. App. 5th 287 (2026) ....................................................................................22

*Guy v. Convergent Outsourcing, Inc.*,
No. C22-1558 MJP, 2023 WL 4637318 (W.D. Wash. July 20, 2023) ....................................7

*Hughes v. Apple, Inc.*,
723 F. Supp. 3d 693 (N.D. Cal. 2024) ..........................................................16, 17, 18

*I.T. v. ChoicePoint LLC*,
No. 25-00193-KKE, 2025 WL 2495079 (W.D. Wash. Aug. 29, 2025) ................................10

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*,
170 P.3d 10 (Wash. 2007)............................................................................................8

*Kesner v. Superior Court*,
1 Cal. 5th 1132 (2016) ......................................................................................16, 17, 18

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................................................................................11



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*LaRock v. ZoomInfo Techs. LLC*,
No. C24-5745-KKE, 2025 WL 1345264 (W.D. Wash. May 8, 2025) ....................................13

*Lavery v. Automation Mgmt. Consultants Inc.*,
360 S.E.2d 336 (Va. 1987)....................................................................................................12

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..............................................................................................22

*Mason v. Mortg. Am., Inc.*,
792 P.2d 142 (Wash. 1990)......................................................................................................6

*Mehta v. Robinhood Fin. LLC*,
No. 21-cv-01013-SVK, 2021 WL 6882377 (N.D. Cal. May 6, 2021) ....................................20

*Merriman Blum v. Amazon.com, Inc.*,
No. C25-0977JLR, 2025 WL 3754248 (W.D. Wash. Dec. 29, 2025).......................................6

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ..........................................................16, 17, 18

*Montes v. SPARC Grp. LLC*,
586 P.3d 999 (Wash. 2026)...................................................................................................6, 8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)..............................................................................10

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009)...................................................................................................8, 9

*Phillips v. KIRO-TV, Inc.*,
817 F. Supp. 2d 1317 (W.D. Wash. 2011)..............................................................................16

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal. 4th 965 (1993) ............................................................................................................19

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..........................................................10, 11, 19

*Rutherford v. Owens-Illinois, Inc.*,
16 Cal. 4th 953 (1997) ..........................................................................................................18

*Sanders v. Am. Broad. Cos.*,
20 Cal. 4th 907 (1999) ..........................................................................................................15

*Schmidt v. Cornerstone Invs., Inc.*,
795 P.2d 1143 (Wash. 1990)......................................................................................................9

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
838 F. Supp. 3d 979 (N.D. Cal. 2026) ..................................................................................20



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)....................19

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ....................4, 5, 11

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ....................3, 4, 6

*Ten Bridges, LLC v. Midas Mulligan, LLC*,
522 F. Supp. 3d 856 (W.D. Wash. 2021)....................8

*Thornell v. Seattle Serv. Bureau, Inc.*,
363 P.3d 587 (Wash. 2015)....................10

*Toy v. Life Line Screening of Am. Ltd.*,
No. 23-cv-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024)....................18

*In re Tracht Gut, LLC*,
836 F.3d 1146, 1150 (9th Cir. 2016). ....................3

*United States v. Iconic Hearts Holdings, Inc.*,
836 F. Supp. 3d 1040 (C.D. Cal. 2026) ....................20

*Weirum v. RKO General, Inc.*,
15 Cal. 3d 40 (1975) ....................17

*Williams v. Newsweek, Inc.*,
63 F. Supp. 2d 734 (E.D. Va. 1999) ....................12

*Wise v. Ring LLC*,
No. C20-1298-JCC, 2022 WL 3083068 (W.D. Wash. Aug. 3, 2022)....................3, 6, 10

*Yanez v. Plummer*,
221 Cal. App. 4th 180 (2013) ....................18

## Statutes

18 U.S.C. § 1030(c)(4)(A)(i)(I) ....................8

Cal. Civ. Code § 1714(a) ....................16

Va. Code Ann. § 18.2-152.3 ....................13

Va. Code Ann. § 18.2-152.5 ....................14

Va. Code Ann. § 18.2-186.3 ....................14

## Other Authorities

16 C.F.R. § 312.3 ....................20



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Fed. R. Civ. P. 12(f) ........ 10
Fed. R. Civ. P. 15(a)(2) ........ 22
Fed. R. Civ. P. 8(a)(2) ........ 1, 3, 6



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## I. INTRODUCTION

Defendants Ring LLC ("Ring") and Amazon.com, Inc. ("Amazon," collectively with Ring, "Defendants") greatly profited from invading the privacy rights of millions of unsuspecting individuals. Defendants invaded the privacy rights of people who had simply walked past a Ring camera with the Familiar Faces feature activated, collecting, analyzing, and retaining the biometric data of all such individuals, including Plaintiffs Charles Sigwalt, Patricia Ortega, and M.C. 1 (collectively, "Plaintiffs") without their knowledge or consent. *See, e.g.*, ¶¶2, 6, 10, 17-19, 22-24, 60, 62.[1] Defendants' arguments notwithstanding, the First Amended Complaint ("FAC") contains facts stating a plausible claim for relief, containing what the Court needs to draw the reasonable inference that Defendants are liable for the misconduct alleged.[2] The FAC clears the low bar of Rule 8. Defendants' challenges to Plaintiffs' common law and statutory claims fare no better. The FAC pleads cognizable economic injury and causation under the Washington Consumer Protection Act ("WCPA"), which reaches Ring through its extensive Washington contacts. It likewise states claims for unjust enrichment, intrusion upon seclusion, negligence, and violations of Virginia law, along with each prong of California's Unfair Competition Law. At bottom, Defendants' motion asks the Court to resolve factual disputes, many turning on information that resides in Ring's own records, in Defendants' favor at the pleading stage. Rule 12(b)(6) does not permit such arguments. The Court should deny the motion to dismiss.

## II. BACKGROUND

Amazon owns Ring, which manufactures video doorbells, cameras, and security products that are part of Amazon's smart-home ecosystem and are integrated with Amazon's cloud infrastructure. ¶¶26-27. Ring's cameras are the most widely deployed residential camera system in the United States. ¶8. In or around December 2025, Ring launched a new feature, "Familiar Faces," for its security cameras, which uses facial recognition technology to scan the faces of everyone who passes by its cameras. ¶2. A "face print" of each person is collected and translated into a template

---

[1] All "¶" citations refer to the First Amended Complaint (ECF 9).

[2] Plaintiffs withdraw Counts III (Virginia Consumer Protection Act) and VIII (California Consumer Privacy Act). As such, the Court need not rule on these two counts.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

so that, through facial recognition technology, Ring can re-identify that person in future scans. ¶¶2-3, 35. After capturing every face it detects, Ring adds each face to either a Familiar Faces or an "unfamiliar faces" library. ¶34. Images of both recognized and unrecognized faces as well as facial recognition data are stored on Amazon's cloud, where they can remain for an unquantified length of time. ¶¶36-37. As Ring has stated, "Your camera learns how to recognize friends, family, and frequent visitors over time." ¶33.

Biometric technologies collect biometric data and use that data to identify or recognize a person based upon a biometric identifier. ¶39. Facial recognition technology, such as that used by Ring's Familiar Faces, is a category of biometric technology that uses facial features to identify a person and creates a unique "faceprint" (similar to a fingerprint) for each person. ¶¶39-40, 44. Because biometric data is immutable and unchangeable, it is incredibly valuable. ¶¶3, 47, 65. Nevertheless, Ring deploys mass surveillance technology without the adequate consent of those being surveilled. ¶4. Ring camera owners must opt in to activate the Familiar Faces feature, but bystanders and passersby never receive notice, nor are they given the opportunity to opt in or out, that their faces are being scanned and added to a database using facial recognition technology—meaning Defendants force unsuspecting, non-consenting individuals into a biometric database. ¶5. Defendants could respect individuals' privacy rights but have deliberately chosen not to. In places with strict biometric protection laws (such as Texas, Illinois, and Portland, Oregon), Ring has restricted the availability of Familiar Faces. ¶6.

Plaintiff Charles Sigwalt ("Plaintiff Sigwalt") unknowingly had his facial recognition data collected by Ring through the Familiar Faces feature when he visited the homes of friends and family. ¶17. Similarly, Plaintiffs Patricia Ortega and M.C. 1 ("Plaintiffs Ortega and M.C. 1") regularly used the playground in their apartment complex while a neighbor's Ring camera was pointed in their direction and unknowingly had their facial recognition data collected by Ring through the Familiar Faces feature. ¶22. Plaintiffs believe Ring continues to retain their biometric information through their facial recognition templates. ¶¶17, 22. Plaintiffs were neither adequately informed that their facial recognition data was being collected nor compensated for their sensitive and valuable information. ¶¶18, 23. By collecting biometric data from Plaintiffs and the Class



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Members, they suffered injury and harm. ¶¶19, 24. Defendants violated state statutory and common laws, offended basic notions of consumer privacy, and caused damages and diminution in value of Plaintiffs' biometric data. ¶¶60, 68, 79-166.

## III. STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Wise v. Ring LLC,* No. C20-1298-JCC, 2022 WL 3083068, at *2 (W.D. Wash. Aug. 3, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible when the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal,* 556 U.S. at 678). In analyzing the sufficiency of the allegations, the Court must "draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

## IV. ANALYSIS

### A. The FAC Satisfies Rule 8.

Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A complaint "does not need detailed factual allegations," *id.*, and the plausibility standard "is not akin to a 'probability requirement[.]'" *Iqbal*, 556 U.S. at 678. Plaintiffs satisfy Rule 8.

Defendants improperly ask the Court to adopt their self-serving inference: that Plaintiffs' biometric data was never collected. MTD at 7. That inference is unsupported by the allegations and contrary to the governing legal standard. Their own authority confirms that where both parties offer plausible explanations, "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013), does not hold otherwise. As that court recognized, "[t]he level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *Id.* at 1107. There, an undisputed fact subject to judicial notice made the defendants' alternative explanation "obvious" and left the plaintiffs' tracing theory merely possible. *Id.* at 1106, 1108, 1110.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Here, by contrast, Defendants' alternative explanation, that none of the Ring devices Plaintiffs encountered had Familiar Faces enabled, reflects speculation about facts that reside in Ring's records, not Plaintiffs' possession.

Far from merely reciting claim elements, Plaintiffs allege that Ring collected their facial recognition data through the Familiar Faces feature (¶¶17, 22) and are entitled to the presumption of truth. *See Starr*, 652 F.3d at 1216. Per the FAC:

- Ring made Familiar Faces available everywhere in the country except where strict biometric laws apply, ¶6;
- by Ring's own description, "when your camera detects a face, it captures the person and adds them to your Familiar Faces library," ¶34;
- the feature captures "each and every face that enters into the view of the camera which has Familiar Faces enabled," *id.*;
- the resulting data is stored on Amazon's cloud, ¶36; and
- Plaintiff Sigwalt visited friends' and family members' homes where "unbeknownst to him, [he] had his facial recognition data collected by Ring through the Familiar Faces feature[,]" while Plaintiffs Ortega and M.C. 1 "regularly used their apartment complex playground while a neighbor's Ring camera was pointed in their direction and, unbeknownst to them, had their facial recognition data collected by Ring through the Familiar Faces feature." ¶¶17, 22.

Because Familiar Faces operates only on Ring devices, Plaintiffs' allegations that their data was collected "through the Familiar Faces feature" necessarily allege that they came within view of a Ring camera with the feature enabled. ¶¶17, 22.

Additionally, "[t]he *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted). This applies here. Whether Familiar Faces was enabled on a device, and whether Ring holds a template of Plaintiffs' faces, are facts stored on Ring's servers, inaccessible


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

to the scanned bystanders. ¶36. By Defendants' own account, "[o]nly the Ring account owner can set up and manage Familiar Faces," and "[p]rofiles and facial recognition information are encrypted and stored in the cloud, not on [owner's] Ring devices." MTD at 3, 4 (quoting Familiar Faces Help Page). Defendants' claim that Ring was ignorant of the "key facts" here, *id.* at 7, cannot be squared with their own descriptions. Plaintiffs, by contrast, have no direct access to that information. Defendants' suggestion that Plaintiffs should have questioned their friends, family, and neighbors before suing, *id.* at 6–7, provides no defense to liability and should not be considered. Ring collects, possesses, and controls this data and profits from the feature it created. As in *Soo Park*, where "many of the relevant facts [were] known only to the defendant," Plaintiffs' allegations, viewed in their "entire factual context," state a plausible claim. 851 F.3d at 928–29. Defendants' reliance on *Fruci & Assocs., PS v. A10 Cap. LLC,* 510 F. Supp. 3d 962, 968–69 (W.D. Wash. 2020), is also misplaced as the plaintiff failed to allege information about its own business and clients. *Id.* at 968. Here, the allegedly missing facts are generated through the Ring app and stored in Defendants' cloud, not Plaintiffs' records. MTD at 3–4; ¶36; *see also Fruci,* 510 F. Supp. 3d at 968 (applying *Soo Park*, 851 F.3d at 928).

Likewise, Plaintiffs' biometric data collection allegations do not depend on whether Plaintiffs were "labeled." *See* ¶¶17, 22, 34–36. By Defendants' own account, biometric data is added to a library automatically, before labeling. MTD at 3. Ring maintains a library of "unfamiliar faces" that "have not been labeled by the Ring user, but which have been identified using facial recognition by Defendant." ¶34; *see* MTD at 4 (describing "[u]nnamed profiles"). Nor does a missing or inaccurate label mean no one was identified. Ring tells users "Familiar Faces uses facial recognition to identify people." MTD at 3. Whether the Ortegas "know their neighbor," or the neighbor knows their names misses the point. The Ortegas allege they "regularly used their apartment complex playground while a neighbor's Ring camera was pointed in their direction." ¶22. They are not "random passersby," MTD at 6, but individuals whose faces regularly appear before the camera, which can "detect when it sees the same person more than once." ¶35. And per Ring, unnamed profiles are removed only after "30 days without recognition," MTD at 4, so it remains reasonable to infer that profiles of people regularly appearing before Ring cameras persist.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Finally, Defendants' motion, which describes Familiar Faces in detail and contests the merits of every claim, belies their claim that "it is impossible for Ring to effectively defend itself." MTD at 7. Fair notice requires "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216. The FAC meets that standard. It identifies the product (Ring cameras), the feature (Familiar Faces), the challenged conduct (automatically capturing faces, converting them into facial recognition data, and storing that data in Defendants' cloud without consent), and the people affected (bystanders, including Plaintiffs, who came before cameras with the feature enabled). ¶¶1–2, 4, 17, 22, 34–37. Rule 8 does not require the detail Defendants demand. MTD at 6; *see Twombly*, 550 U.S. at 555. Indeed, this District declined to dismiss a bystander's biometric privacy claims against Ring founded partly on information and belief. *See Wise,* 2022 WL 3083068, at *3.

**B. Plaintiffs' Washington Consumer Protection Act Claims Survive.**

**1. The FAC Pleads Injury Under the WCPA.**

Plaintiffs sufficiently plead economic loss under the WCPA. *Contrast* MTD at 8. Under the WCPA, a party must allege "injury to a person's business or property[.]" *Merriman Blum v. Amazon.com, Inc.*, No. C25-0977JLR, 2025 WL 3754248, at *3 (W.D. Wash. Dec. 29, 2025) (denying motion to dismiss). The requirement is easily met where a "property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990) (*en banc*).

Defendants' centerpiece, *Montes v. SPARC Group*, does not support dismissal. Plaintiffs do not allege they suffered a WCPA injury based on misrepresentations inducing them to buy a product, the main issue in *Montes*. *See Montes v. SPARC Grp. LLC*, 586 P.3d 999, 1002 (Wash. 2026) ("The issue in this case is whether a consumer suffers an economic injury in 'her business or property' when she purchases—and obtains—the very product she sought to obtain but does so because the seller misrepresented the product's price history."). Moreover, *Montes* noted the flexible nature of the inquiry under Washington law: "[i]njury to business or property may be minimal, difficult to precisely quantify, or even temporary." *Id.* at 1005; *see also Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014) (*en banc*) ("Because the CPA addresses



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

'injuries' rather than 'damages,' quantifiable monetary loss is not required.").

Even though "the business and property injuries compensable under the CPA are relatively expansive," *id.* at 538, Defendants myopically claim Plaintiffs plead no economic loss. But Plaintiffs' allegations are broader and plead injury, which Defendants ignore in their sole citation to ¶22 (*see* MTD at 8). In fact, Plaintiffs "have suffered the following injuries from (1) the interception of private and valuable data, including their biometric facial recognition data, (2) the retention and use of their private and valuable data to Ring, and (3) the failure to justly compensate Plaintiffs for their valuable information." ¶24; *see also* ¶19. They also allege "Defendant caused damage and diminution in the value of biometric data, a form of personal property protected by both inherent and statutory privacy rights," ¶68, along with many other allegations which plead injury. ¶¶12, 47-48, 64-65, 68, 83, 89. Taken together, the FAC alleges injury: diminished value of, and an uncompensated market or rental value for, biometric data, a form of personal property. *See, e.g., Castillo v. Costco Wholesale Corp.*, No. 2:23-cv-01548-JHC, 2024 WL 4785136, at *11 (W.D. Wash. Nov. 14, 2024) ("Plaintiffs sufficiently allege that the personal, health, and financial information of Plaintiffs and the Class Members is valuable and has become a highly desirable commodity, and cite several secondary sources describing the existing market for and estimating the economic value of personal health data.") (citation and quotation omitted); *Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 4637318, at *8 (W.D. Wash. July 20, 2023) ("[A]llegations of the lost value of the PII are sufficient to show an injury, because 'the injury requirement is met upon proof the plaintiff's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'") (quoting *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899 (Wash. 2009)). As such, Defendants' arguments (MTD at 8) that Plaintiffs do not allege how their personal biometric data has any value (they do, *see* ¶¶47-48, 64-65, 68), that Plaintiffs have not attempted to quantify that value (they do, *see* ¶65, but do not need to, *see Frias*, 334 P.3d at 538), or allege that value was lost (they do, *see* ¶¶19, 24), are baseless.

Defendants argue that whether biometric data might have value to Ring or Amazon is irrelevant, emphasizing *Del Vecchio v. Amazon.com, Inc.*, No. C11-366RSL, 2012 WL 1997697



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

(W.D. Wash. June 1, 2012). MTD at 9. *Del Vecchio* does not apply. As Defendants concede, the case analyzed a *Computer Fraud and Abuse Act* ("CFAA") claim, not the WCPA. MTD at 9 (citing *Del Vecchio,* 2012 WL 1997697, at *4). The distinction matters because the CFAA requires that losses aggregate to at least $5,000, a fact Defendants truncated in their parenthetical. *See Del Vecchio*, 2012 WL 1997697, at *4 (noting that plaintiffs needed to allege facts sufficient to demonstrate that a $5,000 loss had actually occurred under 18 U.S.C. § 1030(c)(4)(A)(i)(I): "*It is not enough to allege only that the information has value to Defendant; the term "loss" requires that Plaintiffs suffer a detriment-**a detriment amounting to more than $5,000**.*") (italics in original, bold emphasis added to identify key text omitted by Defendants). The WCPA has no similar loss requirement: "[m]onetary damages need not be proved; unquantifiable damages may suffice." *Panag*, 204 P.3d at 900; *see also Frias,* 334 P.3d at 538 ("quantifiable monetary loss is not required.").

Finally, returning to *Montes* and cherry-picking just two of Plaintiffs' allegations, Defendants try to characterize "privacy injuries" as subjective, non-economic injuries insufficient to allege an economic loss. MTD at 9 (citing ¶¶19, 24). The FAC alleges more. *See, e.g.,* ¶¶12, 19, 22, 24, 47-48, 64-65, 68, 83, 89.

**2. But For Defendants' Conduct, Plaintiffs Would Not Have Suffered An Injury.**

Ring was the but-for cause of Plaintiffs' injuries. *Contrast* MTD at 9. Under the causation element, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc*., 170 P.3d 10, 22 (Wash. 2007). Plaintiffs plead this requirement, alleging that "[a]s a direct and proximate result of Defendant's unlawful, unfair, and deceptive acts and practices," *e.g.*, "the collection, processing, retention, analysis, and commercial exploitation of Plaintiffs' biometric identifiers and biometric information without providing adequate notice to consumers and without legally sufficient consent," "Plaintiffs and Class members suffered injury to their privacy and property interest." ¶¶83, 89. *Cf.* ¶141 ("But for Defendant's conduct… ."). Furthermore, "Plaintiffs and Class members suffered pecuniary losses *when* Defendant collected and retained their sensitive biometric data because of the value of the data itself." ¶64 (emphasis



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

added). *Cf. Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F. Supp. 3d 856, 873 (W.D. Wash. 2021) ("Here, Madrona has alleged that but for Ten Bridges' violation … it would not have suffered the injury… .").

Defendants' miscellaneous arguments do not show otherwise. As to Defendants' suggestion Plaintiffs did not allege Ring cameras collected biometric data (MTD at 9-10), the FAC dispels this notion repeatedly. *See, e.g.*, ¶¶1, 4, 17, 22, 62. And Defendants' attempt to attribute the harm to others (MTD at 10) ignores that the causal link need not "exist between plaintiffs and [the defendant] in order to satisfy this part of the test." *Schmidt v. Cornerstone Invs., Inc.*, 795 P.2d 1143, 1152 (Wash. 1990) (*en banc*). "Instead, the causal link must exist between the *deceptive act*…and the *injury suffered*." *Id.* (citations omitted; emphases in original). *See also Panag*, 204 P.3d at 890 ("Under the plain language of the act, it is not necessary to establish any consumer relationship, direct or implied, between the parties."). That others enabled the Familiar Faces feature (rolled out by Defendants and their software) does not eliminate a causal link.

### 3. The WCPA Applies to Ring Given Extensive Allegations Connecting the Claims with Washington.

Ring LLC wrongly contends the WCPA "cannot apply to Ring LLC (as distinct from Amazon)" because of a lack of nexus between Ring and Washington. MTD at 10. The FAC links Ring LLC to Washington through its sales of thousands of cameras with facial recognition technologies in Washington, its interception of the biometric information of Class members in Washington (thereby harming them in Washington), its control by Amazon in Washington, and its employment of individuals in and around Seattle. *See, e.g.*, ¶¶13-14, 26-27. Ring's suggestion that Washington law should not apply also contradicts its terms of service. ¶15 ("Additionally, Defendant Ring's Terms of Service, not applicable to Plaintiffs and non-class members, select this District as a preferred venue which also contains a choice of law and jurisdiction provision for Washington."). *Cameron v. Country Mut. Ins. Co.*, No. 1:24-cv-03075-MKD, 2024 WL 4557671, at *1 (E.D. Wash. Oct. 23, 2024), is distinguishable. The plaintiffs alleged no defendant with a principal place of business in Washington, identified no claim involving a Washington actor, and did not identify any connection between class members and Washington. *Id.* at *2, 8. Ultimately,


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Ring's representation that "[t]he only alleged nexus between Ring and Washington is that Amazon is based here" is patently false. MTD at 10 (citing ¶13).

Ring LLC also attacks class certification issues, asking the Court to strike nationwide WCPA class allegations under Fed. R. Civ. P. 12(f). MTD at 11. The Court should reject this argument under *Wise*, in which Ring similarly asked the court to strike class allegations under Rule 12(f) but which Judge Coughenour rejected as premature and reflective of a minority position within the Ninth Circuit. *Wise*, 2022 WL 3083068, at *3. As to its argument that Plaintiffs, as citizens of Virginia and California, "lack standing to assert claims on behalf of Washington residents" (MTD at 11), *Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587 (Wash. 2015) (*en banc*), explains that "[t]he CPA ***does allow*** claims for an out-of-state plaintiff against all persons who engage in unfair or deceptive acts that directly or indirectly affect the people of Washington." *Id.* at 592 (emphasis added). Thus, "[t]he geographic limitations that defendants urge this court to adopt defeat the CPA's twin purposes of protecting the public and fostering fair and honest competition, and are not supported by the language of the statute." *Id.* So too here.

**C. Plaintiffs' Unjust Enrichment Claim Should Proceed.**

The FAC sufficiently alleges unjust enrichment. Under Washington law, a benefit is conferred when one "in any way adds to the other's security or advantage." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1093 (W.D. Wash. 2024) (quotation omitted and dismissing claim on other grounds). This District thus recognized "the provision of any [personal health information]" suffices to confer a benefit. *Id. See also I.T. v. ChoicePoint LLC*, No. C25-00193-KKE, 2025 WL 2495079, at *7 (W.D. Wash. Aug. 29, 2025) (relying on *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *11 (W.D. Wash. Mar. 4, 2025), and its holding that providing PII and PHI to defendant confers "a benefit upon Defendant for purposes of her unjust enrichment claim" in denying motion to dismiss unjust enrichment claim).

The claim is also pled under California law. *See In re Clearview AI, Inc., Consumer Privacy Litig.*, 585 F. Supp. 3d 1111, 1131 (N.D. Ill. 2022) (sustaining California unjust enrichment claim where defendants used plaintiffs' biometric information "without their consent"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024) (defendant "unjustly benefited by its collection and



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

use of Plaintiffs' information without consent or compensation").

This is exactly what Plaintiffs pled. Defendants receive biometric data from Plaintiffs and the Class members (¶¶34-36, 91-92), and Defendants profit from this data. *See, e.g.*, ¶¶19(d), 24(d), 67, 90-97; MTD at 3 (acknowledging the feature is only available with a paid subscription or add-on). Further, Defendants retain the biometric data even after the subscription ends. A former subscriber who returns can "have facial recognition resumed upon reactivation using saved profiles." ¶37. Facial recognition data from Plaintiffs and the Class members thus continues to serve Defendants even when the customer is no longer paying for it.

Defendants' contention that nothing suggests Plaintiffs' "specific biometric identifiers could be beneficial to Ring" (MTD at 12), ignores how the feature works and the data's alleged value. Familiar Faces recognizes specific individuals; that is the function of the "specific identifiers" it assigns. ¶35. Indeed, there exists "a huge market for the type of data collected by Ring, including facial recognition data" (¶64), in which biometric data "often carries significantly greater value than other forms of PII" (¶47), with each consumer's facial recognition data estimated to be worth "$20 to $134." ¶65; *see also* ¶46. Nor must Plaintiffs name the "platforms and services" their data improved, as how Defendants use data on their own servers is "peculiarly within the possession and control of the defendant." *Soo Park*, 851 F.3d at 928 (citation omitted); *see also Walgreen*, 733 F. Supp. 3d at 891 n.3 (applying *Soo Park* to allegations about how defendant's website collected and transmitted users' information). Ring states it "continuously improve[s] the [Familiar Faces] technology to enhance performance." ¶38. Lastly, Defendants assert that "absent consent Ring does not use customers' biometric [data] for algorithm or model-training purposes." MTD at 12. That assertion concerns only Ring's "customers," and Defendants concede that "Plaintiffs are not Ring customers." *Id.* at 1.[3]

Defendants' citations do not support dismissal. In each, no benefit passed from plaintiff to

---

[3] This assertion comes not from the FAC but from Amazon's response to Senator Markey, which Defendants ask the Court to consider "[f]or proper context." MTD at 4 n.2. The FAC quotes Senator Markey's letter (¶5), but never mentions Amazon's response, which cannot be used to resolve factual disputes against Plaintiffs at the pleading stage. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

defendant from whom restitution was sought. *See Frame-Wilson v. Amazon.com, Inc*., 591 F. Supp. 3d 975, 995 (W.D. Wash. 2022) (alleged benefit was "reducing price competition"); *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (dismissing claim against Apple defendants where plaintiff's "payments were made solely to Google").

**D. The Virginia Appropriation Law Attacks Fail.**

Plaintiff Sigwalt's VAL claim should be sustained as the statute does protect biometric data and he plausibly alleges that Defendants used his likeness for purposes of trade. ¶¶115-16; *contrast* MTD at 15-16.

***First***, the VAL ***does*** protect biometric data. MTD at 15. In *In re Clearview,* the district court sustained the plaintiffs' VAL claim in a case where the defendants collected facial images and harvested individuals' unique biometric identifiers and corresponding biometric information. *In re Clearview*, 585 F. Supp. 3d at 1118. *See also id.* at 1127. Defendants' sole support did not involve biometric data. *See Williams v. Newsweek, Inc.*, 63 F. Supp. 2d 734 (E.D. Va. 1999) (involving publication of a newsworthy photograph). As the Supreme Court of Virginia has stated, "[i]t seems to us that however little or much plaintiff's likeness … may be worth, defendant who has appropriated them for [its] commercial benefit, should be made to pay for what he has taken, whatever it may be worth." *Lavery v. Automation Mgmt. Consultants Inc.*, 360 S.E.2d 336, 341 (Va. 1987) (citation and quotation omitted). Ultimately, the VAL "creates in an individual a species of property right in their … likeness." *Id.* at 342. And as in *Clearview*, that right extends to the facial recognition data. *See Clearview*, 585 F. Supp. 3d at 1127.

***Second***, Plaintiff Sigwalt alleges Defendants' use of his likeness "for purposes of trade." MTD at 16. *In re Clearview* again informs the Court's analysis. "In determining whether the use was 'for the purposes of trade,' courts are to consider whether the [picture] was used to draw trade to an entity." *Clearview*, 585 F. Supp. 3d at 1127 (citation and quotation omitted; alteration in original). The *Clearview* plaintiffs cleared the motion to dismiss where they alleged the defendants "profited from the unconsented use of their likenesses [] 'for purposes of trade.'" *Id.* Plaintiff Sigwalt's allegations similarly allege lack of consent and Defendants' profit. ¶¶4, 17, 19, 64, 67, 93, 115-16. Defendants offer a red herring that there must be "trading" from another person's



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

identity but a commercial benefit is enough. *See Lavery,* 360 S.E.2d at 341. Without Plaintiff Sigwalt's identity, and the identities of millions of other individuals collected by Ring, there would be no value or utility to Ring's Familiar Faces feature: facial recognition. ¶¶1-3, 33-35; MTD at 16. *Cf. LaRock v. ZoomInfo Techs. LLC,* No. C24-5745-KKE, 2025 WL 1345264, at *3 (W.D. Wash. May 8, 2025) (denying motion to dismiss Washington Personality Rights Act claim where use of names was alleged to be integral to defendant's marketing).

Finally, Ring's identification of persons using facial recognition represents one of the core features of the product; each identification of a person using said facial recognition allows Ring to adequately say that element of the product works in the first instance. ¶¶1-3, 33-35. This, in turn, sells more Ring products to consumers, prevents Ring products from being returned, and assures consumers get the benefit of their bargain when purchasing Ring products, which collectively all result in commercial gain for Defendants. ¶¶19, 24, 67. *Gray v. Amazon.com Inc.,* No. 23-35377, 2024 WL 2206454, at *1 (9th Cir. May 16, 2024), did not even address the VAL and is distinguishable given Plaintiff's allegations regarding not only the collection but also the storage of biometric information. ¶¶3, 5, 22, 34, 36-37, 41.

**E. The Virginia Computer Crimes Act Claim Should Not Be Dismissed.**

Nor should the VCCA claim be dismissed. Here, Defendants argue first that Ring devices are not "computers" under the statute. MTD at 17 (citing Va. Code Ann. § 18.2-152.2). However, "[t]he Act defines the term 'computer' broadly," covering "all 'device[s]' not specifically excluded 'that accept[ ] information in digital or similar form and manipulate[ ] it for a result based on a sequence of instructions.'" *Brewer v. Commonwealth*, 838 S.E.2d 557, 560 (Va. 2020) (quoting Va. Code Ann. § 18.2-152.2 and noting a cellular phone was not specifically excluded). "Devices specifically excluded are ***very basic ones*** 'dedicated to a specific task' and requiring 'minimal end-user or operator intervention,' such as simple calculators, automated typewriters, and fax machines." *Id.* (emphasis added). Ring cameras, particularly with the functionality complained of here, are far from basic devices. Instead, they are part of a smart-home ecosystem, use AI facial recognition and detection technology, can learn how to recognize people, possess the ability to detect repeated faces, and can create and distribute alerts, all the while transferring and storing a



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

library of facial recognition data in the cloud for an unquantified amount of time. ¶¶2, 26, 33-38. While Defendants point to legislative history as focused on hackers, MTD at 17 (citing *Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, No. 2:12-cv-701, 2013 WL 2147478, at *7 (E.D. Va. May 14, 2013)), the statute's reach broadly applies to "[a]ny person who uses a computer or computer network." Va. Code Ann. § 18.2-152.3. And it has been applied to the corporate collection of biometric information. *See In re Clearview,* 585 F. Supp. 3d at 1127 (sustaining VCCA claim against defendants collecting biometric information).

Second, Defendants declare Ring did not "examine" Plaintiff Sigwalt's information. MTD at 17. Under the statute, "[a] person is guilty of the crime of computer invasion of privacy when he uses a computer or computer network and intentionally examines without authority any…identifying information, as defined in clauses (iii) through (xiii) of subsection C of § 18.2-186.3, relating to any other person." Va. Code Ann. § 18.2-152.5. Importantly, "identifying information" specifically includes "biometric data." Va. Code Ann. § 18.2-186.3. *Cf.* ¶120. Here, the FAC contains many allegations confirming Defendants' systematic examination of biometric information, not only from all people coming into contact with Defendants' cameras (¶¶2-3, 34-35, 120) but Plaintiff Sigwalt specifically (¶17). Indeed, an examination of the biometric data of Plaintiffs and class members allows Defendants' Familiar Faces feature to function as Defendants intended. ¶¶2, 3, 33-35, 40.

Finally, "examination" under the VCCA prohibits review "after the time at which the offender knows or should know that he is without authority to view the information displayed." Va. Code Ann. § 18.2-152.5. Here, Defendants' "review" argument rests on a false premise, i.e., that "Ring would have no way of knowing whether Plaintiff authorized his friends or family to identify him." MTD at 18. But the FAC alleges ***Defendants*** never obtained consent, a fact within their knowledge. ¶¶4, 5, 18, 53, 61, 70, 126. And in jurisdictions that have more specific laws governing biometric consent, Defendants knew they could never obtain consent of bystanders and so purportedly withhold the technology, further supporting allegations of knowledge. ¶¶6, 126.

**F. The FAC Alleges Intrusion on Plaintiff Ortega's Seclusion.**

Under Washington law, intrusion upon seclusion requires (1) an intentional intrusion into



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the plaintiff's solitude, seclusion, or private affairs; (2) a legitimate and reasonable expectation of privacy; (3) an intrusion highly offensive to a reasonable person; and (4) damages proximately caused by the intrusion. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024). Similarly, California law requires (1) an intentional intrusion into a place, conversation, or matter in which the plaintiff has a reasonable expectation of privacy, and (2) an intrusion highly offensive to a reasonable person. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

The FAC satisfies each element. Defendants designed Familiar Faces to extract biometric templates from "each and every face" in view (¶34), knowing it would capture nonconsenting bystanders (¶¶5–6). Defendants extracted the biometric information of Plaintiffs Ortega and M.C. 1 without their knowledge or consent (¶¶22, 127, 129), taking "permanent identifiers" that are "particularly private" (¶125), and harming their privacy interests (¶¶130–31). Defendants challenge only intent and the reasonable expectation of privacy. MTD at 18–19. Both arguments fail.

First, Defendants' intent argument misidentifies the intrusion. The FAC challenges ***Defendants' extraction*** of biometric templates from camera footage, not a neighbor's decision to activate Defendants' features. An intrusion is intentional if the defendant "believes, or is substantially certain, that he lacks the necessary legal or personal permission." *Gray*, 653 F. Supp. 3d at 860 (citation omitted). Unlike the *Gray* plaintiffs, who accepted terms permitting the challenged processing, *id.*, Plaintiffs Ortega and M.C. 1 agreed to nothing, and Defendants' awareness that Familiar Faces would process nonconsenting bystanders plausibly establishes they knew they lacked permission. ¶¶5–6, 34, 126-127.

Second, the FAC alleges Plaintiffs Ortega and M.C. 1 were at their apartment complex's playground. ¶¶22, 24(b). More fundamentally, the intrusion concerns Defendants' access to their biometric data, not their mere visibility. California law distinguishes public observation from unwanted access to data: intrusion is not established where a plaintiff "has merely been observed, or even photographed or recorded, in a public place," but may be where the defendant "obtained unwanted access to data about" the plaintiff. *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 914–15 (1999) (citation omitted). Consistently, *Clearview* recognized a California privacy interest in



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

"biometric information, not plaintiffs' mere photographs," where a company extracted facial geometry from publicly available photographs. 585 F. Supp. 3d at 1118, 1130 (California constitutional claim). Washington likewise protects against intrusion into "something which the general public would not be free to view." *Clark v. Amica Mut. Ins. Co.*, No. 13-cv-0082-TOR, 2013 WL 12170300, at *2 (E.D. Wash. Aug. 1, 2013) (citation omitted). The public could see Plaintiffs' faces, but not the biometric templates Defendants extracted. And unlike *Gray*, where Amazon had "disclosed the relevant conduct" through a privacy notice incorporated into accepted terms, 2024 WL 2206454, at *1–2, Defendants provided Plaintiffs Ortega and M.C. 1 no disclosure and they accepted no terms. ¶¶15, 129.

Defendants' authorities are distinguishable. In *Clark*, the plaintiff challenged not any collection of her information but an investigator's statements to neighbors that she was under surveillance and planned to sue. Both facts were already public: the surveillance occurred in public view, and her intent to sue appeared in a public filing. *Clark*, 2013 WL 12170300, at *2. In *Phillips*, decided without a properly filed opposition, a news station filmed another person and the exterior of the plaintiff's home, and filmed his business only from outside while he was absent. *Phillips v. KIRO-TV, Inc.*, 817 F. Supp. 2d 1317, 1323, 1326 (W.D. Wash. 2011). Neither involved obtaining non-public information about an individual without consent, let alone biometric information.

## G. The Gross Negligence and Negligence Per Se Claims Survive.

Both the gross negligence and negligence per se claims by Plaintiff Ortega are sufficiently alleged.

***Duty.*** Under California law, every person owes a general duty to exercise reasonable care for the safety of others. *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016); Cal. Civ. Code § 1714(a). Defendants owed that duty because their own conduct created the risk. Defendants designed and operated Familiar Faces to automatically generate and store facial recognition templates, including those of nonconsenting bystanders, despite having "the capacity not to collect sensitive biometric information." ¶¶2, 22, 34–36, 139–40. Plaintiffs allege Defendants knew or should have known of this risk, and identify public warnings, highlighting that Ring restricted Familiar Faces where laws regulate biometric surveillance. ¶¶5–6, 140; *cf. Kesner*, 1 Cal. 5th at


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1146–48 (regulations provided notice of foreseeable harm).

Courts have recognized this duty on analogous facts. In *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), Meta's tracking code, installed by third-party tax-preparation websites, transmitted users' financial information to Meta. *Id.* at 1016–18. The court held that "creators of tracking tools like Meta's owe a duty of care," citing Meta's "greater control and sophistication" and the "perverse incentives" a contrary rule would create. *Id.* at 1018 (citation omitted). Similarly, in *Hughes v. Apple, Inc.*, the court declined to exempt Apple from the duty of care to stalking victims tracked with AirTags, even though stalkers deployed the devices, because the injuries arose "directly from the tracking device performing that function." 723 F. Supp. 3d 693, 703-04 (N.D. Cal. 2024).

Defendants' arguments fail. MTD at 19–20. First, no special relationship is required where the defendant's own conduct created the risk. *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40, 48–49 (1975). A neighbor's decision to enable Familiar Faces for its intended purpose does not displace Defendants' duty. *See Kesner*, 1 Cal. 5th at 1148. Second, Defendants' claim they could not foresee harm to these Plaintiffs "specifically," MTD at 19, asks the wrong question. "[T]he court's task in determining duty is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed… ." *Cabral v. Ralphs Grocery Co.,* 248 P.3d 1170, 1175 (Cal. 2011) (citation and quotation omitted). Nor does the injury depend on labeling or later use; whether collection caused compensable injury is a separate question. *See Kesner*, 1 Cal. 5th at 1144.

Third, *Brown v. Metro by T-Mobile* involved publicly released security footage of a shooting, the court found it "not foreseeable that a security camera passively recording a public space would create harm." 768 F. Supp. 3d 1068, 1092 (C.D. Cal. 2024). Plaintiffs challenge more than passive recording: Defendants affirmatively extract biometric templates. ¶¶2–3, 22, 34–36. Finally, Defendants' burden argument misstates the duty. Although the FAC challenges collection without consent (¶137), California requires reasonable care, not a guarantee that everyone on camera has consented. *See Meta Pixel*, 724 F. Supp. 3d at 1018–19. Reasonable precautions concern



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

breach, *Hughes*, 723 F. Supp. 3d at 706, and Ring's geographic restrictions suggest some limitations are feasible. ¶6.

***Breach and Causation.*** The FAC adequately alleges breach. Defendants "had the capacity not to collect sensitive biometric information and chose to do so anyway" (¶139), and Ring "has the ability to follow biometric privacy laws with respect to the Familiar Faces feature – but it deliberately chooses not to." ¶6. Although Defendants assert Plaintiffs inadequately pled breach (MTD at 19), they offer no argument addressing whether Defendants exercised reasonable care. That question is ordinarily one for the jury. *Meta Pixel*, 724 F. Supp. 3d at 1019.

The FAC also plausibly alleges causation. California applies the substantial-factor test, which encompasses but-for causation and permits multiple contributing causes. *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968–69 (1997). Defendants collected the biometric information of Plaintiffs Ortega and M.C. 1 when they regularly used their apartment complex's playground within view of a neighbor's Ring camera. ¶¶22–24, 141. Defendants argue "only Plaintiffs' neighbor could take the multiple steps required to create FF profiles." MTD at 20. But Defendants acknowledge once Familiar Faces is enabled, faces are "automatically detected and added" to its library. MTD at 3. The neighbor enables the feature, but Defendants extract and retain the templates and data without the neighbor labeling anyone. ¶¶2, 22, 34–36. A defendant "cannot avoid responsibility just because some other person … was also a substantial factor in causing the plaintiff's harm." *Yanez v. Plummer*, 221 Cal. App. 4th 180, 187 (2013). Nor does foreseeable use of Familiar Faces for its intended purpose sever the causal chain. *Hughes*, 723 F. Supp. 3d at 706–07; *see Kesner*, 1 Cal. 5th at 1148. At minimum, proximate cause presents a factual question. *Meta Pixel*, 724 F. Supp. 3d at 1019.

***Harm.*** The FAC alleges a completed, nonconsensual extraction of the immutable biometric identifiers of Plaintiffs Ortega and M.C. 1, a present privacy injury courts applying California law find sufficient to plead negligence damages. ¶¶22–24, 44, 70; *see Doe v. N. Cal. Fertility Med. Ctr.*, No. 22-cv-01861-DAD-JDP, 2024 WL 246178, at *5 (E.D. Cal. Jan. 23, 2024) (rejecting a challenge to the negligence damages element because the plaintiff "sufficiently alleged a privacy injury"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019)


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

(permitting negligence to proceed based on "present and non-speculative privacy injuries"); *Toy v. Life Line Screening of Am. Ltd.*, No. 23-cv-04651-RFL, 2024 WL 1701263, at *4 (N.D. Cal. Mar. 19, 2024) (recognizing a serious invasion of privacy as "a non-economic privacy injury traditionally recognized under the law"). Plaintiffs allege more than "a simple misappropriation of personal information," *Toy*, 2024 WL 1701263, at *4, because Defendants extracted unchangeable identifiers derived from their faces. *See* Section IV.F (explaining why the extraction invades a reasonable expectation of privacy). Because that invasion is itself a cognizable injury, the claim does not depend on the FAC's additional economic theories. *See* ¶¶64, 68, 142–43.

Defendants argue Plaintiffs have not alleged compensable injury, including facts establishing the value of their biometric information to Defendants, and that their emotional distress is insufficient. MTD at 20–21. But their case, *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, 903 F. Supp. 2d 942 (S.D. Cal. 2012), rejected negligence damages premised on the danger of ***future harm*** following a data breach, absent misuse. *Id.* at 962-63. Here, Plaintiffs allege a completed privacy invasion. ¶¶22–62. Likewise, *Walgreen* rejected generalized allegations of "loss of privacy, loss of confidentiality, [and] embarrassment" as "too vague and conclusory," 733 F. Supp. 3d at 897–98, whereas the FAC identifies the specific invasion of Plaintiffs' biometric privacy. ¶¶22, 34–36, 125. Nor is Defendants' data collection merely a "self-serving 'belief,'" MTD at 20, because the FAC alleges Plaintiffs' biometric information was "collected by Ring." ¶22; *see* Section IV.A. Finally, *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993), concerns recovery for emotional distress, MTD at 21, whereas Plaintiffs independently allege a present privacy injury.

Ring's footnote negligence-per-se argument likewise fails. MTD at 20 n.6. Plaintiffs invoke the FTC Act, COPPA, CCPA, and Washington's biometric statute to support a presumption of negligence within Count VII, not as independent statutory causes of action. ¶146. The absence of a private right of action does not, by itself, preclude reliance on a statute to establish the standard of care. *See In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 639–40 (N.D. Cal. 2024) (permitting reliance on the FTC Act and COPPA within a negligence claim); *Walgreen*, 733 F. Supp. 3d at 896–97. And Plaintiffs adequately plead the underlying negligence elements as


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

discussed above.

**H. Plaintiff Ortega Sufficiently Pleads the UCL Claim.**

Plaintiff Ortega's allegations satisfy all UCL prongs.

**1. The UCL Claims Under the "Unlawful" Prong Survive.**

The FAC alleges violations of the California Privacy Rights Act and California constitutional and common-law privacy principles, not just COPPA and the CCPA. *See* ¶160; *Cortina v. N. Am. Title Co.*, 120 Cal. App. 5th 1030, 1072-73 (2026) ("Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL].") (alterations in original; subsequent history, internal quotation and citation omitted). This includes California Constitution claims. *See, e.g.*, *Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013-SVK, 2021 WL 6882377, at *12 (N.D. Cal. May 6, 2021) (denying motion to dismiss UCL claim based on California Constitution right to privacy). Defendants ignore these laws and thus fail to show dismissal is proper.

Defendants improperly argue they are not subject to COPPA. MTD at 22. The COPPA Rule regulates operators' collection, use, and disclosure of personal information from children and requires operators to safeguard such information. *See* 16 C.F.R. § 312.3. Defendants argue Plaintiffs do not allege Ring devices are directed at children. MTD at 22 (citing 15 U.S.C. § 6501(b)(1)(A)). Whether Defendants direct their conduct entirely or partly at children "is a classic question of fact." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 838 F. Supp. 3d 979, 1007 (N.D. Cal. 2026). The facts alleged support a reasonable inference that Ring's data collection was directed, at least in part, at children under 13. Ring cameras are "ubiquitous" and "[f]ound on almost any doorway or entrance into a small business or home in America[.]" ¶¶29, 30. Ring cameras "learn how to recognize friends, family, and frequent visitors over time" (¶33), which necessarily includes children under 13. Defendants collect, analyze, retain and use biometric information from children under 13 without parental consent. ¶56. Such allegations suffice at this stage to assert COPPA as a predicate act.

Next, Defendants declare Plaintiffs do not allege Ring had "actual knowledge" it was collecting information from a child. MTD at 22 (citing 15 U.S.C. § 6501(10)(A)). Because the FAC supports a reasonable inference that Ring was directed at children under 13 (¶¶29, 30, 33, 56),



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Defendants were plausibly subject to COPPA. As a result, "[t]he Court need not consider whether Defendants knowingly collected information from children to find, at the pleading stage, that the COPPA Rule applies." *United States v. Iconic Hearts Holdings, Inc.*, 836 F. Supp. 3d 1040, 1048-49 (C.D. Cal. 2026). The bar here is low; actual knowledge may be shown "through inference from circumstantial evidence." *In re Soc. Media,* 838 F. Supp. 3d at 1008 (quotation omitted). The facts support a reasonable inference that Ring actually knew it collected information from children under 13. *See, e.g.,* ¶¶29, 30, 33, 56.

Lastly, Defendants argue Plaintiffs do not allege Ring collected anything from the minor plaintiff, M.C. 1. MTD at 23. But the FAC states, "Defendants' extraction of facial geometry or the creation of facial templates from children's images (including upon information and belief from M.C. 1)… ." ¶57; *see also* ¶¶59, 67, 70, 164.

**2. There Are Sufficient Allegations for the UCL "Fraud" Claim.**

On the UCL "fraud" prong, Defendants first assert Plaintiffs do not allege exposure to any statement by Ring. MTD at 23. Yet the FAC includes statements regarding image retention. ¶37. More significantly, Defendants ignore that Plaintiffs' UCL fraud claims turn on omissions, pleaded in ¶¶4, 18, 23, 55, 59, 163, and 165.

As to reliance (MTD at 23), Defendants omit that "[t]he standard for pleading reliance on account of an omission is low." *Brown v. Van's Int'l Foods, Inc.*, 622 F. Supp. 3d 817, 825–26 (N.D. Cal. 2022) (citation and quotation omitted). A plaintiff "may demonstrate actual reliance by pleading that 'had the omitted information been disclosed, [she] would have been aware of it and behaved differently.'" *Id.* (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)). Plaintiffs have done so here. *See* ¶¶62, 165.

Finally, Defendants' undeveloped Rule 9(b) argument (MTD at 23) fails. Plaintiffs allege the who (¶¶2, 13, 26-27), what (¶¶2, 5, 33-34, 36-37, 160, 163), when (¶2), where (¶¶33-38), and the how/why (¶¶5, 33, 34, 36, 37, 163).

**3. Plaintiffs Also Allege a UCL "Unfair" Claim.**

As to the UCL "unfair" claim, Defendants effectively concede the FAC pleads all necessary elements, arguing only that Plaintiffs cannot state an "unfair" claim because they purportedly failed



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

to state any claim under the UCL's unlawful or fraudulent prongs. MTD at 24. Plaintiffs disagree. *See supra* Section IV.H.1-2. California law rejects this approach. Because the UCL "is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Boschma v. Home Loan Ctr., Inc.,* 198 Cal. App. 4th 230, 252 (2011) (citation and quotation omitted). "Each of these three prongs … implicates a different legal standard, although a single practice may simultaneously violate more than one prong of the UCL." *Guthrie v. Transamerica Life Ins. Co*., 121 Cal. App. 5th 287, 292 (2026).

## V. CONCLUSION

The Court should deny Defendants' motion to dismiss. Alternatively, should the Court find any of Plaintiffs' allegations insufficient, Plaintiffs request leave to amend as the FAC has not been tested by motion practice. *See* Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (recognizing a presumption under Rule 15(a) in favor of granting leave to amend); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citation and quotation omitted).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

DATED: October 30, 2026

Respectfully submitted,

*I certify that this memorandum contains fewer than 8,400 words in compliance with Local Rule 7.*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Email: dank@hbsslaw.com
whitneys@hbsslaw.com

Rebecca A. Peterson (*pro hac vice*)
1650 W. 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Email: rebecca.peterson@hbsslaw.com

**HECHT PARTNERS LLP**

By: /s/ *Lori G. Feldman*
Lori G. Feldman (WSBA No. 29096)
David L. Hecht (*pro hac vice* forthcoming)
125 Park Avenue, 25th Floor
New York, NY 10017
Telephone: (917) 983-9321
Email: lfeldman@hechtpartners.com
dhecht@hechtpartners.com

Lina Kaisey (*pro hac vice*)
**KAISEY LAW P.C.**
100 Wilshire Boulevard, Suite 700
Santa Monica, CA 90403
Telephone: (858) 774-0819
Email: lina@kaiseylaw.com

Blake Hunter Yagman (*pro hac vice*)
Allen Neumark (*pro hac vice*)
**YAGMAN PLLC**
118-35 Queens Boulevard, Suite 444
New York, NY 11375
Telephone: (929) 709-1493
Email: blake.yagman@yagmanpllc.com
allen.neumark@yagmanpllc.com

*Counsel for Plaintiffs and the Proposed Classes and Subclasses*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Steve W. Berman*
Steve W. Berman



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX